IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FRANCES RYAN,

                    Plaintiff,                          OPINION AND ORDER

        v.
                                                        21-cv-592-wmc

HARTFORD LIFE AND
ACCIDENT INSURANCE CO.,

                    Defendant.

---

Plaintiff Frances Ryan claimed that defendant Hartford Life and Accident Insurance Company terminated her long-term disability benefits in violation of her rights under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et. seq.* ("ERISA"). At summary judgment, this court agreed that defendant terminated plaintiff's benefits arbitrarily and capriciously, then remanded for further proceedings. After remand, plaintiff's benefits were reinstated, leaving only her Motion for Attorney's Fees and Costs under 29 U.S.C. § 1132(g)(1) (dkt. #52) still pending before this court.[1] For the reasons explained below, the court will grant plaintiff's motion and will award attorney's fees and costs totaling $151,612.50 and $402.00, respectively.

BACKGROUND

Plaintiff, an internal medicine physician, initially filed a claim for long-term disability ("LTD") in August 2018, after sustaining a fall and suffering from a concussion. In addition to dizziness and nausea, she reported difficulties with analysis, decision-

---

[1] Plaintiff had also filed a Motion to Alter or Amend Judgment under Federal Rule of Civil Procedure 59 (dkt. #50), but withdrew it after prevailing on remand (dkt. #63).

making, and concentration, all of which were found to be "key components of [her] job."
(Dkt. #21-11, at 116.)  Initially, defendant had approved plaintiff's LTD claim with a
benefit start date in June of 2018.  Under the terms of the policy, defendant explained that
plaintiff was also required to apply for Social Security Disability ("SSDI") benefits, which
were approved on July 31, 2019.  (Dkt. #48, at 4.)

Mere days later, however, defendant's claim examiner found it "unclear if disability
is supported at this time" (*id.*), and on March 18, 2020, following additional review of
plaintiff's medical records, defendant's case manager informed plaintiff that her benefits
were being terminated, despite the fact that she continued to qualify as disabled under the
Social Security Administration's ("SSA") more stringent definition of "disabled."  *Id.* at
7-8.  Plaintiff appealed the termination, which defendant subsequently denied.  *Id.* at 11.
On September 17, 2021, plaintiff filed her ERISA claim in this court.  (Dkt. #1, at 1.)

At summary judgment, this court held defendant had acted arbitrarily and
capriciously in terminating plaintiff's LTD benefits for three principal reasons:
(1) defendant failed to consider adequately the demanding nature of plaintiff's occupation
as an internal medicine physician before terminating her benefits; (2) defendant failed to
address adequately the weight to give plaintiff's SSA award, which was granted under a
more stringent disability standard; and (3) defendant has a structural conflict of interest
given its dual role of determining benefit eligibility *and* paying out benefits.  (Dkt. # 48,
at 23.)  Accordingly, this court ordered an administrative remand, requiring defendant to
properly consider the evidence in the record.  *Id.*

Following the order for remand, plaintiff filed a Rule 59 Motion, asking the court to reinstate her benefits, and a Motion for Fees and Costs. (Dkts. ##50, 52.) As noted, the Rule 59 Motion was subsequently withdrawn as moot (dkt. # 63, at 1), because plaintiff's benefits had already been reinstated on remand. (Fn. 1, *supra*.) Therefore, the only motion left to consider is plaintiff's Motion for Fees and Costs. Plaintiff argues that fee shifting is warranted because she is both eligible for and entitled to fees under 29 U.S.C. § 1132(g)(1). Defendant argues that she is neither eligible nor entitled to attorney fees; it also asserts that even if plaintiff is entitled to fees, the costs she seeks are not reasonable, and the court should adjust them accordingly. The court addresses these arguments in turn below.

## OPINION

### I. Eligibility for Fees under ERISA's Fee Shifting Provision

ERISA gives the court discretion to award a party its reasonable attorney fees upon a showing of "some success on the merits" of its claim. 29 U.S.C.A. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010) (citation omitted). "Some success on the merits" is a threshold requirement for ERISA fee shifting, answering only the question of whether a party is *eligible* for, though not necessarily *entitled* to, fees. *Id.* at 254-55.

Defendant argues that plaintiff is unable to meet the "some success on the merits" standard for fee eligibility because the remand this court awarded her is a "purely procedural" victory. (Dkt. # 58, at 3-6.) Not only is there no basis in this circuit's caselaw

3

to support the argument that remand does not constitute some success on the merits, *Mowery v. Metropolitan Life Insurance Company*, No. 16-cv-516-jdp, 2017 WL 3575857, at *1 (W.D. Wis. Aug. 18, 2017), plaintiff *has* now had her LTD benefits *reinstated and received backpay* for the payments erroneously denied her by defendant. Therefore, defendant's eligibility argument is baseless, and the only questions left to answer relate to whether plaintiff is entitled to fees, and if so, in what amount.

## II. Entitlement to Fees

To determine entitlement to attorney fees, the Seventh Circuit employs two tests—a five-factor test and the "substantially justified" test. *Zall v. Standard Insurance Company*, No. 21-cv-19-slc, 2023 WL 6388781, at *2 (W.D. Wis. Sept. 29, 2023). The first test weighs: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy personally an award of attorney fees; (3) whether an award of fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefits conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions. *Id.* The second test focuses on whether the losing party's position was "substantially justified." *Id.*

The five-factor test and the substantially justified test produce the same result here, as they "essentially pose the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Id.* (quoting *Raybourne v. Cigna Life Ins. Co.*, 700 F.3d 1076, 1089-90 (7th Cir. 2012)). This court's general practice is to anchor its analysis using the five-factor test, as it "more

accurately articulates the various equitable factors appropriate to consider in determining whether attorney fees are appropriate." *Univ. of Wis. Hosp. & Clinics, Inc. v. Aetna Life Ins. Co.*, 24 F. Supp. 3d 808, 817 (W.D. Wis. 2014) (quoting *Freeland v. Unum Life Ins. Co. of Am.*, No. 11-cv-503-wmc 2013 WL 4482995, at *17 (W.D. Wis. Aug. 19, 2013)); *Mowery*, 2017 WL 3575857, at *1.

Turning to that test, the ability of the offending party to satisfy the award of attorney fees under factor two weighs heavily in favor of awarding fees, as defendant is a large insurance company with ample means to satisfy a fee request. Moreover, an award of fees will also likely deter similar conduct in the future under factor three. This is arguably appropriate because defendant—like an increasing number of ERISA defendants with a conflicting, dual role in determining benefit eligibility, then having to pay those LTD benefits out of its own pocket—has economic incentives to deny or terminate legitimate claims to benefits. *Freeland*, 2013 WL 4482995 at *17. Given defendant's monetary incentive to deny claims, an offset to deter arbitrary and capricious denials in the future is warranted.

The court typically considers factors one and five, the degree of defendant's culpability and the relative merits of the parties' positions, together, as both factors relate to the merits of plaintiff's underlying claim to benefits. *Zall*, 2023 WL 6388781 at *3. In this case, defendant argues these factors weigh in its favor because the administrative record contains conflicting medical opinions regarding plaintiff's disability status, with this court previously acknowledging that it was a "close call" in finding for plaintiff on summary judgment. (Dkt. # 58, at 10.) While factors one and five are certainly a closer call than

factors two and three, they, too, weigh in favor of plaintiff. Indeed, this court found that defendant's termination of plaintiff's LTD benefits arbitrary and capricious because defendant: (1) had a structural conflict of interest in its dual role as of determining benefit eligibility and paying out benefits; (2) failed to address plaintiff's SSA award of long-term benefits; and, least defensible of all given the definition of "disability" under its policy, (3) failed to consider the essential duties of plaintiff's demanding occupation as an internist in determining whether she was cognitively impaired. (Dkt. # 48, at 23.) When taken together, these flaws in defendant's review of plaintiff's claim render defendant's position without merit.

Specifically, while it is true that the record contained conflicting medical evidence, the fact that defendant never compared plaintiff's residual cognitive abilities to those needed by a typical internist to perform her essential duties, much less considered the expectations of her employer, is indefensible given the policy's definition of "disabled" as "prevented from performing one or more of the essential duties of *your* occupation during the elimination period." (Dkt. # 21-11, at 194 (emphasis added).) Under its own policy, therefore, defendant was required to consider plaintiff's demanding occupation in determining her entitlement to benefits. Moreover, though not controlling, defendant should have at least addressed plaintiff's SSA award for long-term benefits decided only a month before, especially as the applicable standard deemed her ineligible if she was able to "engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A) (emphasis added). At minimum, the SSA award cut against defendant's seemingly precipitous termination of plaintiff's LTD

6

benefits because its definition of "disability" is far stricter than defendant's definition, yet defendant failed to even consider it.

Nevertheless, defendant argues that its position is substantially justified, as it: (1) offered plaintiff an administrative remand after the start of litigation; and (2) cited facts from the record and case law to support its arguments against an award. (Dkt. # 58, at 10.) Unfortunately for defendant, however, the problem here is the defects in its underlying decision, not its eventual attempt at compromise, nor counsel's assertion of possible defenses. *Mowery*, 2017 WL 3575857, at *2. Nor is this the first time that this defendant has terminated benefits where it failed to give due weight to a contrary SSA determination. *E.g., Carugati v. Long Term Disability Plan for Salaried Employees*, No. 01-C-5863, 2002 WL 441479, at *6 (N.D. Ill. Mar. 21, 2002); *Black v. Hartford Life Insurance Company*, No. 3:17-CV-1785, 2019 WL 2422481, at *11 (D. Or. June 10, 2019). Given this history, defendant is well aware that an SSA award at least cuts against termination, but still chose to ignore it. Therefore, factors one and five favor plaintiff.

Finally, as to factor four, the amount of benefit conferred on members of the plan as a whole is less relevant in individual disputes like this one. *Rayhourne*, 700 F.3d at 1090. However, as the lower court found in *Rayhourne*, awarding fees may provide an incentive for insurers to consider SSA decisions favorable to a claimant before denying benefits in future cases. *Id.* This incentive means factor four also favors plaintiff, and because all five relevant factors weigh in favor of awarding fees, plaintiff is entitled to attorney fees.

### III. Reasonableness of Plaintiff's Requested Fees and Costs

The starting place to determine the amount of reasonable attorney fees in an ERISA case is calculating the "lodestar" (*i.e.*, calculating the product of an attorney's reasonable hourly rate and the number of hours expended). *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). The court may then exercise discretion in adjusting the award as necessary based on a variety of factors, including the degree of success on the merits and the reasonableness of the total hours expended. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Here, plaintiff seeks a total of $157,780.00 in fees for 324.05 hours of work, along with $1,382.50 in costs. (Dkt # 61, at 9.) The parties do not dispute that counsel's hourly rate is reasonable. Instead, defendant again argues that plaintiff's requested fees should be substantially reduced due to lack of success on the merits. Defendant further argues that $42,307.50 should be excluded from the fee award as "excessive." Finally, defendant argues that plaintiff's requested costs for travel mileage to a hybrid mediation and a mediation fee are unrecoverable under 28 U.S.C. § 1920.

The court declines to apply the blanket fee reduction based on plaintiff's lack of success on the merits for reasons previously discussed: plaintiff's victory here is essentially complete, having now had her benefits restored *and* receiving backpay for the benefits defendant erroneously denied her. However, the court does address below whether: (a) the requested fees are otherwise excessive; and (b) the disputed cost requests are recoverable.

### A. Proposed reductions in plaintiff's fee request

#### 1. Fees related to undecided motions

Defendant argues for the exclusion of 12.4 hours from the lodestar for plaintiff's preparation of a Rule 59 Motion and Motion for Status on the basis that these claims were unsuccessful, and therefore, should be excluded. Regarding the Rule 59 Motion, it is not necessarily true that this motion was unsuccessful, as it was withdrawn as moot following her success on remand. Moreover, the Supreme Court in *Hensley* differentiated between distinct claims for relief that are based on the same set of facts and legal theories, from those that are not. 461 U.S. at 434-35. In particular, the *Hensley* Court contrasted "distinctly different claims for relief based on different facts and legal theories" with "claims for relief . . . involv[ing] a common core of facts or . . . based on related legal theories." *Id*. In the latter, the Supreme Court found that counsel's time is dedicated more to the litigation as a whole, rather than a discrete series of claims, meaning district courts "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." *Id*. at 435.

Accordingly, the court declines to exclude fees incurred in preparing plaintiff's Rule 59 Motion. Not only was this motion not "unsuccessful," but it pertained to reinstatement of plaintiff's benefits, which was the ultimate result plaintiff's counsel achieved. Thus, prevailing on her Rule 59 Motion was "but one of the paths" that could have led to plaintiff's "ultimate victory." *Stark*, 354 F.3d at 674. Under the same reasoning, the court also declines to exclude fees incurred in preparing plaintiff's Motion for Status, as this was

related to and based on the same factual and legal arguments as her Motion for Summary

Judgment, which was ultimately successful.

### 2. Administrative tasks

Defendant next argues that the fee award should be reduced by another 12.45 hours

($6,167.50) that plaintiff's counsel spent on purely clerical tasks, such as downloading

files, creating exhibits, and ECF filings.  Generally, administrative tasks like these are not

recoverable as attorney fees, even if performed by an attorney.  *Jacobson v. SLM Corp.*

*Welfare Ben. Plan*, 669 F. Supp. 2d 940, 945 (S.D. Ind. 2009); *Alberth v. Southern Lakes*

*Plumbing & Heating, Inc.*, No. 19-cv-62, 2021 WL 2779038, at *6 (E.D. Wis. July 2, 2021).

While plaintiff argues that the court should remedy this overbilling by awarding these

hours at a skilled, "ERISA paralegal" rate of $175 per hour, she cites no justification for

this hourly rate, aside from a comparison rate from California. (Dkt. # 61, at 8-9.)

Regardless, because courts within this circuit have a practice of excluding administrative

fees from attorney fee awards, *Jacobson*, 669 F.Supp. 2d. at 945,  *Alberth,* 2021 WL

2779038 at *6, this court will do the same by excluding the 12.45 hours of clerical tasks

from the lodestar.

### 3. Excessive hours

Finally, defendant argues that some of the hours billed are excessive, including:

(1) time spent indexing and reviewing the administrative record; (2) time spent drafting

correspondence regarding the administrative record; and (3) travel time for the hybrid

mediation.  First, defendant proposes to deduct a total of 74 hours for reviewing the administrative record as excessive.  However, defendant omits the fact that the initial administrative record in this case is some 2,916 pages long, and the detailed billing logs prepared by plaintiff's counsel reflect how he reviewed and read 500 pages of records each day until he had reviewed the entire file.  (Dkt. #54-2, at 10.)  Further, counsel's review clearly did not consist solely of indexing (or other purely clerical work); rather, counsel's meticulous review of the file resulted in him identifying over 200 pages of records left out of production.  This resulted in the final administrative record totaling some 3,142 pages before indexing.  Indeed, because defendant's mistakes in its initial disclosure warranted another thorough review of the administrative record, the court sees no reason to exclude these hours as excessive or duplicative.

Next, defendant also objects to 6.5 hours for drafting two, 3–4-page letters regarding the administrative record.  However, defendant's argument for why this time is excessive is largely conclusory, while the correspondence itself demonstrates those hours were spent ensuring defendant provided the 200 pages of documents initially missing from the administrative record.  Once again, therefore, the court sees no reason to exclude those hours.

Finally, defendant objects to the inclusion of 4.6 hours of roundtrip driving so that plaintiff's counsel could attend an in-person mediation with plaintiff.  Since the Seventh Circuit has recognized that attorneys may bill travel time based on the opportunity cost associated with it, *Stark*, 354 F.3d at 674 (citing *Matter of Maurice*, 69 F.3d 830 (7th Cir. 1995)), defendant's primary argument is that plaintiff's attorney could have attended the

mediation remotely, making driving to be with his client in-person merely a matter of preference. Whether travel time is compensable in hybrid proceedings such as this one is a relatively novel issue. In this specific case, however, the court is not inclined to second-guess counsel's judgment as to the benefits of being present in person. If anything, the court is inclined to find that the benefits of in-person communication render these fees compensable. In particular, given that plaintiff's specific medical conditions make it difficult for her to spend extended periods of time looking at a computer screen (dkt. #48, at 12), expecting her to communicate with her attorney solely through a screen for several hours would likely have negatively impacted both the quality of counsel's representation and plaintiff's ability to participate meaningfully in the mediation. Thus, the court sees no reason to exclude this time from the lodestar either, leaving only the 12.45 hours plaintiff's counsel billed for clerical tasks to be excluded, resulting in a reduction in the lodestar of $6,167.50.

## B. Recoverability of plaintiff's requested costs

As for costs, defendant argues that $980.50 of plaintiff's request is not recoverable because it was incurred to cover mediation costs and counsel's travel miles to the mediation. The relevant statute enumerates six expenses that may be taxed as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees; and

(6) compensation of court appointed experts or interpreters. 28 U.S.C. § 1920. Moreover, these costs must be interpreted narrowly. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012). For example, in the ERISA context, the Seventh Circuit has recently rejected an award of *pro hac vice* fees as reimbursable expenses, finding them distinct from the six types enumerated by § 1920. *Canter v. AT&T Umbrella Benefit Plan No. 3*, 33 F.th 949, 959 (7th Cir. 2022).

Because plaintiff provides no response to defendant's argument that these costs are not recoverable, and given the imperative to interpret 28 U.S.C. § 1920 narrowly, the court is persuaded that the mediation fees and travel mileage are not recoverable and should be excluded from plaintiff's costs. Therefore, plaintiff is entitled to her requested fees and costs, minus the fees billed for administrative tasks and costs incurred for the mediation and related mileage. This results in an award of $151,612.50 in fees and $402 in costs.

ORDER

IT IS ORDERED that:

1)  Plaintiff's motion for fees (Dkt. # 53) is GRANTED.

2)  Defendant is ordered to compensate plaintiff in the amount of $151,612.50 for attorney fees and $402.00 for costs.

Entered this 28th day of April, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

13